**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TODD BOWERMAN,

    *Plaintiff*,                              CASE NO: 17-cv-13903

*v.*                                       DISTRICT JUDGE TERRENCE G. BERG
                                          MAGISTRATE JUDGE PATRICIA T. MORRIS

NICK LYON,
SUSAN K PRINE,
and SAGINAW COUNTY,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's claims be *sua sponte* **DISMISSED WITHOUT PREJUDICE** because the Court lacks subject matter jurisdiction over them. Alternatively, the Complaint, (Doc. 1), should be **DISMISSED WITH PREJUDICE** because it fails to state any claim upon which relief can be granted.

**II.    REPORT**

    **A.    Introduction and Allegations**

On December 4, 2017, Plaintiff filed the instant Complaint, which alleges Defendants Nick Lyon, Susan K Prine, and Saginaw County violated various constitutional provisions. *See generally* (Doc. 1). He proceeds in this action unrepresented by counsel and *in forma pauperis*.

1

(Doc. 2). Broadly, he contends Defendants "fraudulent[ly] induc[ed]" him "to *enter* into a Sec. 403 42 U.S.C. 603(a)(C)(III) *personal responsibility contract* when he had no *duty* to *enter* into that *contract* which now deprives him of his inherent and constitutional rights, from which he now suffers injuries and damages." (Doc. 1 at 1). As Plaintiff notes in his Complaint, Defendant Lyon is employed as "Director of the Department of Health and Human Services Child Support Services," ("DHHS"), while Defendant Prine works as "Director of the Saginaw County Friend of the Court." (*Id.* at 3). Further, he contends that all Defendants, Saginaw County included, "disseminate through public advertisements they *shall* act in a manner consistent with the best interests of the child," and that such an advertisement is "false . . . ." (*Id.* at 5). He also alleges that Defendants said the following statements on behalf of "the child(ren)":

> 1: He/she has the *right* to know his or her mother and father and *benefit* from a relationship with both *parents*, and;
> 2: He/she will have two *legal* parents, and;
> 3: It will be *easier* for him/her to learn the medical histories of both parents, and;
> 4: He/she would *benefit* from healthcare coverage available through the father, and;
> 5: He/she has the *right* to financial support from both parents until age eighteen, or beyond in some circumstances, and;
> 6: It will be easier for him/her to receive *benefits* such as dependent or survivor's *benefits* from the Veteran's Administration or from the Social Security Administration, and;
> 7: It will be *easier* for him/her to *inherit* through the father, and;
> 8: Completing the form would *protect father's rights*, children's *rights* and mother's *rights*.

(*Id.*). Thereafter, Plaintiff furnishes a lengthy, irrelevant, and largely flawed history of the Michigan DHHS's participation in the Aid to Families with Dependent Children program ("AFDC"). *See generally* (*Id.* at 6-23). Read generously, he seems to suggest that

2

Defendants unlawfully lured customers to use their services in tracking down those owing child support, and engaged in unconstitutional means (*i.e.*, using a noncustodial parent's social security number) to "track and hunt" such individuals "down like . . . animal[s]." (*Id.* at 14-15). In his view, this conduct violated numerous constitutional provisions and criminal statutes.

### B.     Screening Procedure and Governing Law

In enacting the original *in forma pauperis* ("IFP") statute, Congress recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)). Therefore, Congress enacted a screening procedure, *see* 28 U.S.C. § 1915(e)(2)(B), which requires that the court review all complaints where the plaintiff is proceeding IFP and *sua sponte* dismiss a case before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the document and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

**C.    Analysis**

At the outset, I suggest that this Court lacks subject-matter jurisdiction over the present matter. "Generally, federal courts have no jurisdiction over domestic relations matters." *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003). To be sure, a district court in the Sixth Circuit "must properly exercise jurisdiction" over claims "that the state's method of determining and enforcing child support is unconstitutional and contrary to federal law," as it presents a colorable federal question. *Agg v. Flanagan*, 855 F.2d 336, 339 (6th Cir. 1988). When, however, an action only purports to present such a question, and in actuality "is a mere pretense . . . concerned with domestic relations issues," federal courts lack jurisdiction over the

4

matter and must dismiss it. *Danforth*, 76 F. App'x at 616. In my view, the pleadings before the Court are intended to attack the merits of the underlying child-support order. That Plaintiff lists Defendants' stated commitment to acting in the best interests of the child as alleged false statements, for instance, shows that the Complaint serves only to camouflage Plaintiff's bitterness over the outcome of underlying state-court determinations. (Doc. 1 at 5); *see also, e.g.*, (*Id.*) (claiming the DHHS's policy view that a child has "the *right* to know his or her mother and father and *benefit* from a relationship with both *parents*" is a falsehood evidencing criminal liability). Put simply, Plaintiff's true objective in this suit renders the exercise of federal subject-matter jurisdiction over his Complaint inappropriate.

Should the Court disagree with this recommendation, I believe Plaintiff's Complaint should be dismissed in its entirety on the merits.

Plaintiff accuses Defendants of many things, namely: (1) deprivation of rights under 42 U.S.C. § 1983[1]; (2) conspiracy against rights under 18 U.S.C. § 241; (3) frauds and swindles or mail fraud under 18 U.S.C. § 1341; (4) dissemination of false advertisements under 15 U.S.C. § 52; (5) compelled use of a social security number under 42 U.S.C. § 408; (6) involuntary servitude or slavery in violation of the Thirteenth Amendment; (7) forced self-incrimination in violation of the Fifth Amendment; (8) intentional infliction of a bill of attainder; (9) forced and compelled association; and (10) violation of his right to privacy. Without exception, Plaintiff

---

[1] Count 1, though identified as a 42 U.S.C. § 1983 claim, includes no specific reference to a constitutional interest. Because Plaintiff proceeds *pro se*, however, I nevertheless proceed to construe the constitutional interests at stake in Counts 6 through 10 as supplementing his prayer for §1983 relief in Count 1. Ultimately, Count 1 should fail for the same reasons Counts 6 through 10 should fail, as is explained below.

furnishes bare legal conclusions in support of his claims. Each count in the Complaint merely regurgitates unadorned Black Letter gibberish, omitting any and all details as to what particular Defendants did, when or how they did it, and why the conduct is condemnable. *See generally* (Doc. 1 at 10-21). This alone proves sufficient reason to dismiss the Complaint in its entirety. *Accord, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim]."). Even so, there exist myriad alternative reasons to dismiss this Complaint as well:

     Counts 2 through 5 accuse Defendants of violating criminal statutes for which no private right of action lies. *E.g.*, *Duncan v. Cone*, No. 00-5705, 2000 WL 1828089, at *1 (6th Cir. Dec. 7, 2000) (dismissing a claim brought under 42 U.S.C. § 408 as frivolous); *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) ("Violations of [18 U.S.C. §§ 341 and 1343] do not give rise to private causes of action."); *Turner v. Welkal*, No. 3:12-CV-0915, 2014 WL 347815, at *11 (M.D. Tenn. Jan. 31, 2014) ("Because §§ 241 and 242 are purely penal, it cannot be inferred that Congress intended to create a private right of action in passing them."); *Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2012 WL 6084167, at *1 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir. 2016) ("[T]he Federal Trade Commission Act, 15 U.S.C. §§ 45(a)(1) and 52(a)(2), does not give rise to a private right of action before this Court."). *See generally Chrysler Corp. v. Brown*, 441 U.S. 281, 316 ("[T]his Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action

of some sort lay in favor of someone.'" (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1979))). His claims thereunder must fail.

Count 6 attempts to juxtapose an obligation to pay court-ordered child support with slavery. (Doc. 1 at 16-17). Such an argument is laughably devoid of merit. *Accord, e.g.*, *Adams v. Cty of Calhoun*, No. 1:16-CV-678, 2018 WL 1324465, at *2 (W.D. Mich. Mar. 15, 2018) (collecting cases and bluntly noting that "[t]here is no comparison between paying court-ordered child support and compulsory, involuntary servitude").

Count 7 contains an argument that requiring Plaintiff to respond to a subpoena designed to acquire "any financial or other information needed to establish, modify, or enforce a support order," 42 U.S.C. § 666(c)(1)(B), and threatening penalties for unresponsiveness, violates the Fifth Amendment right against self-incrimination. (Doc. 1 at 17-18). The Fifth Amendment to the Constitution, however, guarantees only that "[n]o person . . . shall be compelled in any *criminal* case to be a witness against himself." U.S. Const. amend. V (emphasis added). Child-support proceedings of the sort Plaintiff laments are civil in nature, not criminal. *See* M.C.L. § 722.714 (granting circuit courts in Michigan jurisdiction to determine child-support obligations and prescribing "[t]he Michigan court rules for civil actions" as the governing all procedures). His claim on this ground, therefore, cannot prevail.

Count 8, which suggests that Title IV-D is an unconstitutional bill of attainder, fails for similar reasons. A bill of attainder is a law that identifies an individual or group thereof based on past conduct, and assigns punishment "without provision of the protections of a judicial trial." *Nixon v. Administrator of General Services*, 433 U.S. 425, 468 (1977). As an initial

7

matter, I note that the child-support order at issue did not flow from Title IV-D; Defendants acted under color of Michigan law, pursuant to Michigan authority. *See Blessing v. Freestone*, 520 U.S. 329, 332-335 (1997) (noting that states who participate in the AFDC program must "collect overdue support payments," "establish a comprehensive system to establish paternity," "locate absent parents," and "help families obtain support orders," among other things). Moreover, the order itself is not clearly punitive, as it can reasonably be said to serve the nonpunitive legislative purpose of encouraging the financial support of vulnerable children. *See Risenhoover v. Washington Cty. Cmty. Servs.*, 545 F. Supp. 2d 885, 891 (D. Minn. 2008). But even assuming a child-support order does constitute "punishment" traceable to Title IV-D, Plaintiff does not allege he was denied notice, process, or the right to appeal a judgment against him; he merely suggests in exceedingly vague fashion that Defendants tricked him into going along with the proceedings. This is not enough to state a claim that Title IV-D is an unconstitutional bill of attainder.

Count 9 suggests that ordering the payment of child support amounts to requiring Plaintiff "to *support* or espouse ideals and beliefs with which he disagreed[]" in a manner contrary to his First-Amendment right to speech. (Doc. 1 at 19-20) (citing *Wooley v. Maynard*, 430 U.S. 705 (1977)). This claim should fail because he has not alleged how his child-support obligation somehow requires him to support or espouse any ideals or beliefs whatsoever; indeed, he remains free to feel however he wishes about the obligation, so long as he fulfills it.

Count 10 says that Defendants, by helping to enforce a court-ordered obligation, violated Plaintiffs "inherent right to be let alone and free from governmental intrusion into his

8

personal and private life . . . ." (Doc. 1 at 21). The constitutional right to privacy protects two types of interests: (1) the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26 (1977); and (2) the interest in "avoiding disclosure of personal matters," *id.* at 599, 603-04. It does not protect the Plaintiff's amorphous interest in absolute freedom from the reach of court orders.

### D. Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Plaintiff's claims be *sua sponte* **DISMISSED WITHOUT PREJUDICE** because the Court lacks subject matter jurisdiction over them. Alternatively, the Complaint, (Doc. 1), should be **DISMISSED WITH PREJUDICE** because it fails to state any claim upon which relief can be granted.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390,

401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 20, 2018                              S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Todd Bowerman at 6595 South Graham Road, St. Charles, MI 48655.

Date: June 20, 2018                               By s/Kristen Castaneda
                                                  Case Manager

10